IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **TRACY OWENS** | * | |
| **ex rel. A.O., a minor,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 11-3204** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.[1]** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## ALTERNATIVE MOTION FOR REMAND

Tracy Owens ("Plaintiff") on behalf of her minor daughter ("A.O.") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and Alternative Motion for Remand (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 24).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

decision that A.O. is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that

follow, Plaintiff's Alternative Motion for Remand (ECF No. 19) is **GRANTED**.

# I

## Background

On December 21, 2007, Plaintiff protectively applied for SSI on behalf of A.O., who was

born in 2000, alleging disability beginning on January 1, 2001, due to asthma.  R. at 14, 137-43,

150.  The Commissioner denied Plaintiff's application initially and again on reconsideration;

consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at

123-31, 134.  On July 20, 2010, ALJ Eugene M. Bond held a hearing in Washington, D.C., at

which Plaintiff testified.  R. at 438-47.  On August 26, 2010, the ALJ issued a decision finding

A.O. not disabled since the application date of December 21, 2007. R. at 11-24.  Plaintiff sought

review of this decision by the Appeals Council and submitted additional evidence.  R. at 428-36.

The Appeals Council denied Plaintiff's request for review on September 7, 2011.  R. at 5-8.  The

ALJ's decision thus became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

On November 9, 2011, Plaintiff filed a complaint in this Court seeking review of the

Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States

Magistrate Judge for final disposition and entry of judgment.  The case subsequently was

reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully

submitted.

## II

## Summary of Evidence

**A.     Jill Higgs**

On February 25, 2008, Jill Higgs completed a teacher questionnaire, which the ALJ summarized in his decision:

> A Teacher Questionnaire was completed by Jill Higgs on February 25, 2008, at [A.O.'s] Grade Level 2, in which she indicated that [A.O.] had obvious problems in the domain of Acquiring and Using Information; had very little problems in Attending and Completing Tasks; and had absolutely no problems in Interacting and Relating with Others, Moving About and Manipulating Objects, and Caring for Herself.

R. at 17; *see* R. at 159-66.

**B.     State Agency Medical Consultants**

On April 9, 2008, M. Wild, M.D., a state agency medical consultant, opined that A.O.'s functional limitation in acquiring and using information was marked. R. at 291. Her functional limitations in attending and completing tasks and in caring for herself were less than marked. R. at 291-92. A.O. had no functional limitation in interacting and relating with others. R. at 291. Dr. Wild did not indicate an opinion as to the degree of A.O.'s functional limitations regarding her moving about and manipulating objects and her health and physical well-being. R. at 292. Accordingly, Dr. Wild found that A.O.'s impairments did not functionally equal a listed impairment. R. at 293.

On August 5, 2008, C. Koppelman, M.D., another state agency medical consultant, opined that A.O.'s functional limitations in acquiring and using information and in attending and completing tasks were less than marked. R. at 298. She had no functional limitations in interacting and relating with others and in caring for herself. R. at 298-99. Dr. Koppelman did not provide an opinion as to the degree of A.O.'s functional limitations regarding her moving

about and manipulating objects and her health and physical well-being.  R. at 299.  Dr.

Koppelman thus also found that A.O.'s impairments did not functionally equal a listed

impairment.  R. at 300.

**C.      Keryn S. Castine, M.A.**

On December 7, 2009, Keryn Castine performed a psychological evaluation of A.O.,

which the ALJ summarized in his decision:

> Keryn S. Castine, M.A., school psychologist, performed a psychological
> evaluation of [A.O.] on December 7, 2009 to obtain a current measure of her
> cognitive abilities and to evaluate her educational needs.  [A.O.] came to the
> assessment site willingly with the examiner and stated that she likes school and
> likes her teacher.  Ms. Castine stated that the testing results found [A.O.] to be
> functioning in the borderline ranges of intellectual abilities.  [A.O.] demonstrated
> a personal strength regarding her ability to verbally express herself to make her
> long-term knowledge known and understood.  Her weaknesses were found to be
> processing visual information, analytical and serial reasoning, and applying
> [mental] manipulation to items while retaining them in her working-memory.  Ms.
> Castine stated that the Individualized Education Program (IEP) Team should use
> these results in conjunction with other assessments in order to design the most
> effective educational program for [A.O.]

R. at 18; *see* R. at 189-92.

**D.      Hearing Testimony**

Plaintiff testified at the hearing in July 2010 that A.O. was about to begin the fifth grade

in special education.  R. at 441-42.  According to Plaintiff, A.O. read at a second-grade level, and

her math skills were at a "low level."  R. at 443.  Plaintiff assisted A.O. with her homework.  R.

at 443, 444-45.  Some of A.O.'s school work needed to be read to her, and she had difficulty

with simple math, such as adding and subtracting single digits, telling time, and counting money.

R. at 443.  Further, A.O. did not "really stay on task" and would need assistance.  R. at 445.

Plaintiff needed to remind A.O. about routine daily tasks, such as getting up in the morning,

getting dressed, and brushing her teeth.  R. at 445.  According to Plaintiff, A.O.'s condition had

remained about the same.  R. at 445.  A.O.'s school planned on keeping her in special education.

R. at 445-46.

**E.**       **Post-Hearing Evidence**

After the ALJ issued his decision in August 2010, Plaintiff submitted to the Appeals Council on September 8, 2010, additional evidence of a teacher questionnaire completed by Dave Morris and Hazel Warfield on August 31, 2010, relating to the period beginning on January 14, 2010.  R. at 428-36.  According to the questionnaire, A.O.'s reading level was at grade 1.5, and her math level was "below grade level."  R. at 429.  An unusual degree of absenteeism for unknown reasons was noted.  R. at 429, 435.  The questionnaire indicated that A.O. had "a very serious problem" in acquiring and using information, "an obvious problem" in attending and completing tasks, "a slight problem in interacting and relating with others, and "no problem" in moving about and manipulating objects and in caring for herself.  R. at 430-34.  It was noted that A.O. received services for academic support by a special educator for reading and math.  R. at 435.  Further, assessment data reviewed on January 14, 2010, indicated a significant discrepancy between psychological testing and academic achievement and that no response to interventions was noted.  R. at 435.

### III

### <u>Summary of ALJ's Decision</u>

On August 26, 2010, the ALJ found that A.O. (1) had not engaged in substantial gainful activity since the application date of December 21, 2007; and (2) had the severe impairments of learning disorder and asthma; but (3) did not have an impairment or a combination of impairments meeting, medically equaling, or functionally equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1.  R. at 17-23.  The ALJ found that A.O.'s impairments

did not functionally equal a listed impairment because she did not have an impairment or combination of impairments that resulted in either "marked" limitations in two out of six domains of functioning or "extreme" limitation in one domain of functioning.  R. at 23.  Rather, the ALJ found that she had less than marked limitations in acquiring and using information and in attending and completing tasks and no limitation in interacting and relating with others, in moving about and manipulating objects, in the ability to care for herself, and in health and physical well-being.  R. at 18-23.

In determining that A.O.'s functional limitation in acquiring and using information was less than marked, the ALJ found the following:

> As noted in the psychological evaluation by Keryn S. Castine, M.A., [A.O.] was reported to be a willing student.  She advocates for herself, attempts all her work, and she has knowledge of the first grade trick words.  In the classroom, she was observed using a calculator to answer questions on her math worksheet, and was observed to open her text book and using it to help answer one of the questions on the sheet.

R. at 19.

Further, in determining that A.O.'s functional limitation in attending and completing tasks was less than marked, the ALJ stated:

> Ms. Castine, in her report of January 14, 2010, indicated that [A.O.] came to the assessment site willingly with the examiner and answered questions about herself and her school.  She attempted all items and was thought to perform to the best of her ability.  Ms. Higgs, in her report of February 25, 2008, indicated that [A.O.] did have some problems in Attending and Completing Tasks[;] however, out of 13 activities listed in the Teacher Questionnaire completed by Ms. Higgs, [A.O.] was found to have no problem with 9 of the activities, a slight problem with only 2 of the activities, and an obvious problem with only 2 of the activities.

R. at 20 (citation omitted).

The ALJ accordingly found that A.O. was not disabled since December 21, 2007.  R. at 24.  In so finding, the ALJ "accorded significant weight to the opinions of the State Agency

medical and psychological consultants because they are deemed experts and highly knowledgeable in the area of disability and because their opinions are largely consistent with the evidence of record as a whole." R. at 18. The ALJ also found that A.O.'s "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence, and limiting effects of [A.O.'s] symptoms are not entirely credible." R. at 18.

## IV

## Disability Determinations and Burden of Proof

An individual under the age of 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. To determine whether a child has a disability within the meaning of the Social Security Act, the Commissioner follows a three-step sequential evaluation process. 20 C.F.R. §§ 416.924, 416.926a. The first step is a determination whether the child is engaged in substantial gainful activity. *Id.* § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step. The second step involves a determination whether a claimant's impairment or combination of impairments is severe, i.e., more than a slight abnormality that causes no more than minimal functional limitations. *Id.* § 416.924(c). If not, benefits are denied; if so, the evaluation continues. The third step involves a determination whether the child has an impairment or impairments that meet, medically equal, or functionally equal in severity a listed impairment. *Id.* § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

"A child's functioning is determined by looking at six broad areas, or 'domains,' in an attempt to evaluate 'all of what a child can or cannot do.'" *Woodhouse ex rel. Taylor v. Astrue*, 696 F. Supp. 2d 521, 527 (D. Md. 2010) (quoting 20 C.F.R. § 416.926a(b)(1)). In the domain of "acquiring and using information," the Commissioner considers how well a child acquires or learns information, and how well the child uses the learned information. 20 C.F.R. § 416.926a(g). Impairments "functionally equal listing-level severity when they produce an 'extreme' limitation in a child applicant's functioning in one domain or 'marked' limitations in functioning in two domains." *Woodhouse*, 696 F. Supp. 2d at 527 (citing 20 C.F.R. § 416.926a(d)). A "marked" limitation in a domain is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation in a domain is one that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

## V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ failed to discuss pertinent evidence in the record regarding A.O.'s performance in school. Specifically, according to Plaintiff, the ALJ considered in his decision the opinions of the state agency medical consultants, Ms. Castine's evaluation, and Ms. Higgs's responses to a teacher questionnaire, but did not mention A.O.'s fourth-grade school records from January 14 to February 4, 2010, which demonstrate that her impairments "are far more severe [than] demonstrated by the earlier evidence." Pl.'s Mem. Supp. Mot. Summ. J. 6,

ECF No. 19-1.   Defendant asserts, however, that it is not clear that the specific findings mentioned by Plaintiff are inconsistent with the ALJ's decision.   Def.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 24-1.   Defendant further argues that Plaintiff does not demonstrate how this evidence warrants an extreme limitation in one domain of functioning or a marked limitation in two domains.   *Id.*

On January 14, 2010, it was noted that A.O.'s instructional performance was "below grade level."   R. at 185.   "[A]cademically she is not retaining material and making progress."   R. at 185.   Further, her reading comprehension was "well below grade level."   R. at 185.   A.O.'s performance on a series of reading tests indicated that her overall reading ability was in the "poor" range of performance.   R. at 185.

A.O.'s performance on cognitive testing revealed borderline scores and major working memory issues.   R. at 186.   Her reading vocabulary was well below grade level, as test results were in the low to low average range.   R. at 186.   Her math calculation also was assessed at well below grade level, as her performance was in the very low to low range.   R. at 186.   A.O.'s written language expression was well below grade level as well, as her test scores fell in the poor range of performance.   R. at 186-87.   "Major areas of difficulties were seen in all writing areas," and test scores fell into the "poor" range of performance.   R. at 186-87.

A.O.'s math problem solving likewise was well below grade level, as her performance was either "low average" or "markedly below average" on subtests.   R. at 187.   A.O.'s spelling and writing were in the low average range of performance, and her writing fluency was in the low range of performance.   R. at 187.   She "had severe issues with leaving out major main points and details" in her writing.   R. at 187.

Furthermore, in a referral dated September 8, 2009, by A.O.'s classroom teacher and special education teacher to her school's Pupil Services Team, the following was noted:

> [A.O.'s] specific areas of need are in all content areas.  In Math, she has difficulty with number concepts such as simply counting—for example, she has stated that seven is greater than 9 and counting backwards from 10 is an arduous task.  Her areas of need for Reading/Language Arts are just as great.  [A.O.] has difficulty understanding fourth grade text because it seems she is unable to process what is read or asked of her.  Understanding language encountered in the text is very difficult.  Additionally, she has [exhibited] language deficits.  [A.O.] is an extremely quiet student.  When speaking with her, she has difficulty expressing herself verbally and articulating her thoughts.  Furthermore, [A.O.] has trouble following oral and written directions.  Her working memory of simple tasks is very limited.  Frequently, she is unable to follow a single step task.

R. at 198.

The Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).  "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason."  *Id.*  The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence."  *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [she] has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Id.* (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotation marks omitted).

The Commissioner maintains that the ALJ "is not required to cite every piece of evidence in the record."  Def.'s Mem. Supp. Mot. Summ. J. 8, ECF No. 24-1.  The duty of explanation is

11

satisfied, however, "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999).  Here, the Court cannot say that the ALJ's error in failing to discuss and weigh the evidence above was harmless. The Commissioner concedes that "all of the evidence [Plaintiff] cites would appear to suggest, at most, additional limitation in only the domain of acquiring and using information," Def.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 24-1, but essentially argues that Plaintiff fails to demonstrate reversible error because this evidence shows, at most, a marked level of limitation in only one domain of functioning, which, in turn, fails to satisfy functional equivalence of a listed impairment.  The Commissioner does not explain, however, how the evidence cited above fails to evince an extreme limitation in acquiring and using information, instead calling on the Court to make such a determination.  Because it is the ALJ's responsibility to determine functional equivalence, 20 C.F.R. § 416.926a(n), and because the ALJ did not explain the weight given to the evidence cited above, the Court declines to do so and **REMANDS** this case for the ALJ to do so in the first instance.

For these reasons, the Court **REMANDS** this case to the Commissioner for further proceedings.  The Court accordingly need not address Plaintiff's argument regarding additional evidence she submitted to the Appeals Council, *see, e.g.*, *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 345 n.6 (4th Cir. 2012), but notes that, on remand, either party may introduce additional evidence.  *See King*, 615 F.2d at 1020.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is

**DENIED**.   Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**.   Plaintiff's

Alternative Motion for Remand (ECF No. 19) is **GRANTED**, and this matter is **REMANDED**

for further proceedings.  A separate order shall issue.

Date: June 24, 2014                                     _____/s/_____
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge